UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| BRADLEY J. HUNT, | ) |
| Petitioner, | ) ) ) |
| v. | ) No. 2:21-cv-00404-JPH-DLP ) |
| BENEFIEL, | ) ) ) |
| Respondent. | ) |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Bradley J. Hunt filed a petition for a writ of habeas corpus challenging a Wabash Valley Correctional Facility disciplinary proceeding identified as WVD 21-05-0064. For the reasons explained in this Order, Mr. Hunt's habeas petition is **DENIED,** and the **clerk is directed to enter final judgment** in Respondent's favor.

This Order also addresses Mr. Hunt's pending motion for relief and motion requesting status of motion for relief. Mr. Hunt's motion for relief, dkt. [18], is **DENIED**. Mr. Hunt's motion for requesting status, dkt. [19], is **GRANTED** such that the Court now issues its ruling dismissing his petition as outlined below.

**I. Overview**

Prisoners in Indiana custody may not be deprived of good-time credits or of credit-earning class without due process. *Ellison v. Zatecky,* 820 F.3d 271, 274 (7th Cir. 2016); *Scruggs v. Jordan,* 485 F.3d 934, 939 (7th Cir. 2007); *see also Rhoiney v. Neal,* 723 F. App'x 347, 348 (7th Cir. 2018). The due process requirement is satisfied with: (1) the issuance of at least 24 hours advance

1

written notice of the charge; (2) a limited opportunity to call witnesses and present evidence to an impartial decision-maker; (3) a written statement articulating the reasons for the disciplinary action and the evidence justifying it; and (4) "some evidence in the record" to support the finding of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see also Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974).

## II.   The Disciplinary Proceeding

On May 13, 2021, Officer Okes issued a Report of Conduct charging Mr. Hunt with a violation of Indiana Department of Correction Adult Disciplinary Code B 231 for conduct involving intoxicating substances. Dkt. 8-1. The Conduct Report states:

> On the date of 05-13-2021 at approximately 10:13 p.m., I, c/o Okes was conducting a security round on the left wing of PHU. Upon my arrival of cell P102 I did notice Offender Hunt, Bradley #214865 was displaying very odd behavior. I asked Offender Hunt to speak with me at his cell's observation window, however, he was unable to walk on his own and his speech was slurred. His mannerisms and body language lead me to believe he was under the influence of an intoxicating substance.

*Id.* (cleaned up).

Sgt. Luken provided a similar witness statement:

> On 5-13-21 at approximately 10:15 P.M. I, Sgt. E. Luken was informed by Officer K. Okes that Offender Hunt, Bradley #214865 in P-102 was displaying very odd behavior. Upon my arrival I noticed that Offender Hunt was unable to walk on his own, and his speech was very slurred. His mannerism and body language lead me to believe he was under the influence of an intoxicant.

Dkt. 8-2.

Mr. Hunt's cellmate provided a witness statement that Mr. Hunt was sleeping prior to the officers arriving at his cell and that he was woken up to be taken to the medical department. Dkt. 8-9. Mr. Hunt's cellmate stated that Mr. Hunt had not used any intoxicants. *Id.* Further, Mr. Hunt took a urine drug screen on the date of the incident, and no substances were detected.[1] Dkt. 8-3.

Mr. Hunt was notified of the charges on June 2, 2021. Dkt. 8-5. He pleaded not guilty, requested a lay advocate, and requested a copy of the drug screen results. *Id.* Mr. Hunt also requested video evidence of the incident, which he says will show him walking out of his cell, by himself, thereby contradicting the Report of Conduct. *Id.* The Screening Report indicates that Mr. Hunt's request for video evidence was denied because the incident occurred inside his cell. *Id.*

A hearing was held on June 18, 2021. Dkt. 8-8. At the hearing, Mr. Hunt said he was not intoxicated and asked the disciplinary hearing officer ("DHO") to reduce the offense from a level B to a level C offense. *Id.* The evidence presented at the hearing included staff reports, Mr. Hunt's statements, witness statements, and drug test results. *Id.* The DHO considered this evidence and found Mr. Hunt guilty of violating Offense Code B 231. *Id.* The DHO did not review or consider the video evidence, nor was any video summary prepared for the disciplinary

---

[1] The urine screen Mr. Hunt took tested for that tested for the presence of barbiturates, benzodiazepines, buprenorphine, cocaine, marijuana, methadone, methamphetamine, methylendioxy-methamphetamine, opiates, and oxycodone. *See* dkt. 8-3 (Urine Drug Screen Preliminary Test Form). In Mr. Hunt's appeal, the Facility Head noted that "not all intoxicating substances show up on a drug screen." Dkt. 8-10.

hearing.² *Id.* However, the Respondent provided the Court with the video for review *ex parte.* Dkts. 11. The sanctions imposed included the loss of 90 earned credit time days and a one-level demotion in credit class. Dkt. 8-8.

Mr. Hunt then filed the present petition, dkt. 2, Respondent submitted a return, dkt. 8, and Mr. Hunt submitted two replies, dkts. 13 and 14.³

### III.   Analysis

Mr. Hunt's petition raises three grounds for relief: 1) that he was improperly denied video evidence, and therefore, this evidence was not reviewed by the DHO; 2) that there was insufficient evidence to support his disciplinary conviction; and 3) that there was no medical opinion provided to support that he was intoxicated. Dkt. 2 at 3. Mr. Hunt alleges, dkt. 2 at 2, and Respondent agrees, dkt. 8 at 3, that he exhausted his administrative remedies for the first and second issue raised in his petition, dkt. 2. *See also* dkts. 8-10 and 8-11. For the third issue, Respondent asserts procedural default, dkt. 8-3, which Mr. Hunt does not contest, dkts. 13 and 14.

---

² On appeal to the facility head, the video was reviewed. Dkt. 8-10. The appeal response stated: "The video showed [Mr. Hunt] walking very slow to the exit door and not all intoxicating substances show up on a drug screen." *Id.* The Court has reviewed the video *ex parte*, and the video shows Mr. Hunt slowing walking to the medical department with two officers escorting him.

³ The Court has reviewed both of Mr. Hunt's replies and notes that the replies raise new arguments not in his habeas petition. For example, Mr. Hunt argues that per IDOC policy that the conduct report must include any and all staff or offender statements that were involved in the disciplinary case, that the DHO was not impartial, that Mr. Hunt was retaliated against, and that the DHO never made a written statement as to why his requested evidence was denied. *See* dkts. 13-14. "Arguments raised for the first time in a reply brief are waived," *Stechauner v. Smith*, 852 F.3d 708, 721 (7th Cir. 2017), so the Court does not consider new arguments presented in Mr. Hunt's replies.

### A. Video Evidence

Mr. Hunt argues that he requested, but was denied, video evidence showing him walking unassisted out of his cell. Mr. Hunt thus argues that the video is exculpatory evidence that he was not under the influence of an intoxicant as charged. Dkts. 2 at 3 and 8-5. He also argues that the DHO failed to review and consider this video evidence. *Id.*

Due process requires that in prisoner disciplinary proceedings, prisoners be given access to exculpatory evidence. *Johnson v. Brown*, 681 F. App'x 494, 496-97 (7th Cir. 2017); *Rasheed-Bey v. Duckworth*, 969 F.2d 357, 361 (7th Cir. 1992). "That right to due process presumptively entitles inmates to view exculpatory evidence, not only to ensure that the hearing officer considers all relevant evidence, but also to enable the inmate to make use of the evidence and prepare the best defense." *Johnson*, 681 F. App'x at 496. "Exculpatory" in this context means evidence that "directly undermines the reliability of the evidence in the record pointing to [the prisoner's] guilt." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 2011). The petitioner has the burden of establishing that the evidence he was denied was material and exculpatory. *See Piggie v. Cotton*, 344 F.3d 674, 678 (7th Cir. 2003).

Here, Mr. Hunt has not met that burden. The Court has reviewed the relevant portion of the video showing Mr. Hunt being slowly escorted out of his cell by two officers, each holding one of Mr. Hunt's arms. Dkt. 11 at 10:10:16-10:10:27. The video does not show Mr. Hunt walking unassisted. *Id.* Therefore, as Respondent argues, the video "does not exonerate Hunt, and it does not create

5

a reasonable probability of a different result . . . At most, the facts are neutral, proving neither intoxication or sobriety." Dkt. 8 at 8. The video does not undermine the reports of the two officers, each of whom observed that Mr. Hunt's behavior was "odd," including slurred speech, and that he was "unable to walk on his own." Dkt. 8-1; 8-2.  So even if the hearing officer should have reviewed the video, that error would be harmless. *Jones v. Cross*, 637 F.3d 841, 847 (7th Cir. 2011) (harmless error doctrine applicable to prison disciplinary habeas corpus actions); *Piggie v. Cotton*, 344 F.3d at 678.

Accordingly, Mr. Hunt is not entitled to habeas relief on this ground.

### B. Sufficiency of the Evidence

Mr. Hunt argues that there is insufficient evidence to support his charge because he was able to walk, he passed a urine screen, no drug paraphernalia was found when his cell was subjected to a shakedown, his cellmate corroborated that he was not intoxicated, and no medical attention was called during the incident in accordance with facility procedures. Dkt. 2 at 3.

The Court may not "consider the relative weight of the evidence presented to the disciplinary board." *Meeks v. McBride*, 81 F.3d 717, 720 (7th Cir. 1996). Therefore, "it is 'general[ly] immaterial that an accused prisoner presented exculpatory evidence unless that evidence directly undercuts the reliability of the evidence on which the disciplinary authority relied' in support of its conclusion." *Id.* Here, in the Conduct Report, Officer Okes says that he observed Mr. Hunt's "odd behavior," including his inability to walk on his own and slurred speech. Dkt. 8-1. Officer Luken separately observed the same "odd behavior,"

6

including the inability to walk on his own and speech that was "very slurred." Dkt. 8-2. Mr. Hunt points out his cellmate's statement that Mr. Hunt "did not use any intoxicants" and that the urine drug screen was not positive for any of the controlled substances within the scope of the test. This may be evidence from which the hearing officer could have found Mr. Hunt not guilty. But the statements of Officers Okes and Lukens are "sufficient indicia of reliability" for the Court to conclude that Mr. Hunt's conviction was not arbitrary. *Meeks*, 81 F.3d at 720.

Challenges to the sufficiency of the evidence are governed by the "some evidence" standard. In a prison disciplinary proceeding, the "hearing officer's decision need only rest on 'some evidence' logically supporting it and demonstrating that the result is not arbitrary." *Ellison*, 820 F.3d at 274. The "some evidence" standard is much more lenient than the "beyond a reasonable doubt" standard. *Moffat v. Broyles*, 288 F.3d 978, 981 (7th Cir. 2002). "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455–56 (emphasis added); *see also Eichwedel v. Chandler*, 696 F.3d 660, 675 (7th Cir. 2012) ("The some evidence standard . . . is satisfied if there is any evidence in the record that could support the conclusion reached by the disciplinary board.")

The "'some evidence' standard" is "a 'meager threshold.'" *Jones*, 637 F.3d at 849 (*quoting Scruggs*, 485 F.3d at 939). Once the Court finds "some evidence" supporting the disciplinary conviction, the inquiry ends. *Id.* This Court may not

7

"reweigh the evidence underlying the hearing officer's decision" or "look to see if other record evidence supports a contrary finding." *Rhoiney*, 723 F. App'x at 348 (*citing Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000)).

Mr. Hunt was charged with violating Indiana Department of Correction ("IDOC") Adult Disciplinary Code B 231, which in relevant part, prohibits "being under the influence of any intoxicating substance (e.g., alcohol, inhalants, or chemical-soaked paper)." Dkt. 8-4. The Report of Conduct provides sufficient evidence to conclude that Mr. Hunt was under the influence of an intoxicating substance. *McPherson v. McBride*, 188 F.3d 784, 786 (7th Cir. 1999) (A Conduct Report "alone" can "provide[] 'some evidence' for the . . . decision."). In the report, Officer Okes notes Mr. Hunt displayed odd behavior and slurred his words. Dkt. 8-1. A second correctional officer, Sgt. Luken, arrived and he "noticed that Offender Hunt was unable to walk on his own, and his speech was very slurred." Dkt. 8-2. Sgt. Luken concluded by noting that Mr. Hunt's mannerisms and body language led him to believe he was under the influence of an intoxicant. *Id.* These statements are "some evidence" that supports the DHO's decision, and that is all due process requires. *See Jones*, 637 F.3d at 849.

Ultimately, Mr. Hunt is asking the Court to reweigh the evidence, which it cannot do. *See Webb v. Anderson*, 224 F.3d 649, 652 (7th Cir. 2000) ("It is not our province to assess the comparative weight of the evidence underlying the disciplinary board's decision."); *Hill*, 472 U.S. at 455 (noting that the "some evidence" standard "does not require examination of the entire record,

8

independent assessment of the credibility of witnesses, or weighing of the evidence."). Mr. Hunt is not entitled to habeas relief on this ground.

To the extent that Mr. Hunt argues that certain medical policies and procedures were not followed for incidents of suspected use of intoxicants, his argument fails. Prison policies, regulations, or guidelines do not constitute federal law; instead, they are "primarily designed to guide correctional officials in the administration of a prison . . . not . . . to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481-82 (1995). Claims based on prison policy or state laws, such as what Mr. Hunt raises here, are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 531 (7th Cir. 2008) (rejecting challenges to a prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

### C. Professional or Medical Opinion

Mr. Hunt's third claim is that he was not provided a professional medical opinion regarding whether or not he was intoxicated. Dkt. 2 at 3. Mr. Hunt argues that "[a] correctional officer is not professionally or medically trained" to assess whether someone is intoxicated; rather, this assessment should be based

9

on "medical facts." *Id.* Respondent argues that this claim is procedurally defaulted since it was not raised in either of his appeals. Dkt. 8 at 3. Mr. Hunt concedes that he did not exhaust this ground, and argues that it was because he "wasn't made aware that [c]orrectional officers aren't trained in this area." Dkt. 2 at 4.

In Indiana, only the issues raised in a timely appeal to the Facility Head and then to the Final Reviewing Authority may be raised in a subsequent petition for writ of habeas corpus unless a showing of cause and prejudice or a miscarriage of justice has been made. *See* 28 U.S.C. § 2254(b)(1)(A); *Washington v. Boughton*, 884 F.3d 692, 698 (7th Cir. 2018); *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002); *Moffat*, 288 F.3d at 981 .

The Court has reviewed Mr. Hunt's lower-level appeals and finds that he did not exhaust his administrative remedies related to his third ground. *Compare* dkt. 2 at 1-3 *with* dkts. 8-10 and 8-11. The Court also notes that Mr. Hunt failed to address the question of exhaustion in his subsequent replies to the Respondent's return. *See* dkts. 13 and 14. Mr. Hunt does not demonstrate cause and prejudice or a miscarriage of justice with his vague statement alone, that he was unaware of correctional officers' training and thus, he is not entitled habeas relief on this ground.

However, even if Mr. Hunt had exhausted this ground, the IDOC correctional officers may offer testimony based on their experience in that role, which requires them to recognize characteristics of intoxication, and to even further, identify illegal substances and contraband. The officers' professional

experience is, at a minimum, "some evidence" that the DHO could consider. While there is no "litmus test," common indicia of intoxication include "impaired attention and reflexes," "unsteady balance," and "slurred speech." *Gutierrez v. Kermon*, 722 F.3d 1003, 1012 (7th Cir. 2013) (citing *Fought v. State*, 898 N.E.2d 447, 451 (Ind. Ct. App. 2008)). These common indicia are precisely what the officers identified about Mr. Hunt's behavior in their staff reports of the incident. Many of these same behavioral observations could be made by a layperson. Further, Mr. Hunt points to nothing in the IDOC Adult Disciplinary Code, nor does the Court find any such element, that requires that an inmate charged with being under the influence first receive any medical testing or evaluation, and "[p]rison administrators are not obligated to create favorable evidence or produce evidence they do not have." *See Manley v. Butts*, 599 F. App'x 574, 576 (7th Cir. 2017) (petitioner "not entitled to demand laboratory testing"). Accordingly, had Mr. Hunt fully exhausted this ground, he still would not be entitled to habeas relief.

## IV.   Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558.  There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Hunt to the relief he seeks. Accordingly, Mr. Hunt's petition for a writ of habeas corpus must be **DENIED**. This action is **DISMISSED**.

Additionally, Mr. Hunt's motion for relief, dkt. [18], is **DENIED**. Mr. Hunt's motion for requesting status, dkt. [19], is **GRANTED** to the extent that this matter is now concluded, and his petition is dismissed for the reasons discussed above.

Judgment consistent with this Order shall now issue.

**SO ORDERED.**

Date: 10/4/2022

*James Patrick Hanlon*
James Patrick Hanlon
United States District Judge
Southern District of Indiana


Distribution:

BRADLEY J. HUNT
214865
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
Electronic Service Participant – Court Only

David A. Arthur
INDIANA ATTORNEY GENERAL
David.Arthur@atg.in.gov